And this brings us to the final case of this morning, Appeal No. 24-1570, Lane v. Stericycle. And we welcome to the podium Ms. Case. Good morning, Your Honors. May it please the Court. My clients, the appellants in this case, Cheryl Lane and Adrian Haas, it's undisputed in the record that up until December of 2021, they were making less than every single male in the exact same role, doing the exact same job. And that is true, even though many of those men were far less experienced and far less tenured than them. In December of 2021, after they lodged internal complaints about pay discrimination, the defendant brought their salaries up a little bit. It paid them what the lowest man was earning. And that person, a man named Ronnie Patel, was earning $98,000 a year. He had about one year experience in sales. My client, Cheryl Lane, had 20 years, or I'm sorry, she had eight years with Stericycle. Adrian Haas had 20 years with Stericycle. At the district court level, the district court found that the plaintiffs established prima facie cases under both the Equal Pay Act and Title VII. That's no easy hurdle to clear in these types of cases. Then the burden shifted to the defendant under both the EPA and Title VII to offer either an affirmative defense, a factor other than sex, or with respect to Title VII, a nondiscriminatory reason to explain this pay disparity. Defendant said that the pay disparity was the result of salary history, meaning that the men had all earned more in their previous roles with Stericycle. And that's why they were earning more than the appellants were. Did we raise below, as a comparator, Mr. Patel and Mr. Robert Austin? I know there's quite a bit by Stericycle that they were ambushed by the use of hospital key CADs, column CADs in my head, key action directors. But was that raised below as a comparator, particularly those two? When you say raised below, do you mean at the district court level? That's the only version. Yes, they absolutely were. And defendant's argument that it was ambushed with them is really a red herring. It was dealt twice with at the district court level. In our initial discovery request, we sought information relating to all key account directors on both hospital sides. They provided that information without objection. And so, yes, at the district court level, we did discuss Mr. Austin and Mr. Patel as comparators, particularly because, as a district court found, they were all key account directors. They were all doing the exact same job, which is to sell Stericycle's products and services. With respect to Mr. Austin, we discussed in detail at the district court level and also on appeal that he was moved from a level 5 to a level 8, which was what the key account director was, and that even though his salary as a level 5 was well already within the level 8 salary level, defendant still decided to give him a $10,000 pay increase, which undercut defendant's explanation that That's Mr. Austin, right? Correct. That's Mr. Austin. Mr. Patel, it's undisputed that when he was moved into the role in September of 2021, his salary was increased to $98,000, and he was a level 5 with one year of sales experience. When my clients were moved into the role from level 7 to level 8, they didn't receive any raise whatsoever. They were within the pay band. And so there's a finding by the district judge that when they were moved, that their base salary was increased, and so that finding was incorrect. That is incorrect. Their base salaries, so for the two appellants and their two female counterparts who were co-plaintiffs in the original case but not in this appeal, their base salaries were not increased until they lodged complaints of pay discrimination. Then, I think it was December 17th of 2021, their salaries were then increased to that of Mr. Patel, the most junior of all of them. So they worked in that role for three months. Allow me to interject here. You're using the word move, but I want to make sure that there was a finding below that they were promoted, that this move from account manager to that of key ex-director, that was actually a promotion. Correct. Correct. Yes. And the way I understood defendant using the word promotion, and I don't disagree with it, but I think they used the word promotion meaning that if you moved from a certain pay grade that was lower than an 8, that was considered a promotion. So many of the CADs were not pay grade 8s and were moved into that role. Those were the ones they deemed transfers. Correct. Correct. So it's undisputed that the salary history of the CADs is what it is. Defendant relies on their pay chart that was attached to summary judgment. We don't dispute that information that the men had always made more than my clients, but what we do dispute is that the salary history had anything to do with the CAD compensation. There's just no nexus. There's no evidence that shows that any of the decision makers involved in setting the key account director compensation considered salary history. The head of compensation for the Supernova Project, a woman named Miss Galloway, during her deposition when asked why the male CADs were making so much more than the plaintiffs in the case, she repeatedly said, I don't know. If you look at her deposition transcript, she was asked that with respect to many of the individual men, such as Robert Austin. Why is he making more? I don't know. She had ample opportunity during her deposition to say it's because of his salary history. It's because he had always made more. We decided to keep people where they were. She didn't say that. In fact, Sorry, but was that a 30B6 deposition or not? No. She was in StairCycle's PowerPoint that it produced in discovery. She was listed as the head of compensation for the Supernova reorganization. So regardless of designation. Correct. I interrupted you.  Oh, no. But I have a question. What do you do with her statements that in her deposition? So I think all of it was considered every factor, including, you know, previous earnings. She uses that phrase. What do you make of that one? And then we have a philosophy with StairCycle that when we transfer people into positions, we don't typically touch compensation. So how do we think about those two statements? Yeah. With respect to the last one, that piece of testimony came from questions pertaining to employee one, who's referred to an employee one in the briefing. He was moved down into a cab role. So he took a voluntary demotion down to that role. So her answer there was with respect to why didn't he also have a pay decrease? Why was he making so much more? And she said, well, it's kind of a redlining policy, right, where they just keep people where they are. With respect to the first comment that you asked about, that's what she said when asked about the investigation she undertook in response to plaintiffs' complaints about pay discrimination. So she said she had no idea why the men were paid more. But then she said after the women lodged the complaint of pay discrimination, she undertook a compensation analysis. And in the deposition I said, what factors did you consider in determining whether what they are earning now is the same? And she said she considered a myriad of things, education experience, salary history being one of those things. What she didn't say, though, is that salary had anything to do with the initial setting of the pay, which occurred back in September of 2021. So in that piece of her testimony, she was talking about what she was looking into in determining whether or not their salaries were fair in December. And when their salaries were increased, the plaintiffs received a letter which said their increase was the result of a market adjustment. Didn't say anything about salary history having anything to do with their pay. It was simply a market adjustment. And if the setting of base pay really was based on salary history, why was all four of the plaintiffs at that time, why were all of their salaries brought to the exact same level? They weren't earning the same before. They all had varying salary histories before. And when I asked Ms. Galloway that question, she said, well, we moved them all up to the same level because they were all promoted into the position at the same time, which in isolation seems like it might be a good reason. But when you look at how everybody else was treated, that wasn't the case. Mr. Austin was also promoted into the position at the exact same time as my clients, but he was making $110,000, which included a $10,000 pay increase at the time of promotion. So under the Equal Pay Act, and we discuss this a lot in their briefs, the defendant bears an enormous burden if they want to obtain summary judgment based on an affirmative defense for which they bear the burden. And here, the district court, in its opinion, didn't seem to really weigh defendant's evidence at all, and certainly not against the evidence in the record that plaintiff had offered. What the district court said instead is that, well, plaintiff doesn't point to any evidence that each of these 15 men were paid discriminatorily in the past, so defendant's entitled to summary judgment. But that's not the burden. That's not plaintiff's burden to bear. The question should have been, did defendant offer ample evidence? Did they meet that threshold that's listed by the Hotel 71 case? Did they meet the threshold that establishes that no jury could reach any sort of conclusion in favor of the non-movement? Nothing should have shifted back to the plaintiff on the equal pay claim. I see that I'm low on time, so I'll reserve the rest unless there's any other questions. Okay. Thank you, Ms. Case. We'll give you a little time on rebuttal. Ms. Schilling. I'm about to say good afternoon. We're close. Good morning, good afternoon, Your Honors. Jennifer Schilling on behalf of Defendant Apelli Stericycle. May it please the court. I'd like to start out with just some, frankly, misstatements that were just made in response to your questions. First of all, the discovery closed in this case on April 14, 2023. At that time, no hospital CAD had ever been named as a comparator in this case. At the time discovery was closed, this case entirely dealt with one sole comparator who worked on the national side of Stericycle's division, where all four plaintiffs worked. Three days after discovery closed, plaintiffs sought to amend the complaint, and Judge Shaw said, you don't need to amend the complaint, but you need to update your interrogatories. For the first time on April 17, three days after discovery closed, they amended their interrogatory answers, which is docket number 38-6, and they added eight male hospital CADs. They expressly, Judge Pryor, did not include Mr. Pryor. I'm sorry, Mr. Patel. I hope they didn't include him. They did not include Mr. Patel. They named eight male hospital CADs, and Judge Shaw, in his opinion, said they're not going to consider Mr. Patel as a comparator because he was not raised before, and he was clearly not even raised when they amended. That's not exactly what the judge found, right, on page 14 of that opinion? Judge Shaw said that because he was not named as a comparator, he was not addressing Mr. Patel. Because he was not named as a comparator? As a male comparator. And so when I know we've read that line a few times, but it says, Plaintiffs do not argue that hospital CAD Ronnie Patel, who earns the same base salary of $100,940, is being paid more than them. So I do not consider him to be a male comparator. That's the correct quote, Your Honor. And so I don't want us to misquote or mischaracterize what the finding was. There was a clear finding that he was not a comparator because he was making the same as of 2022. And also because he was never raised in the amended interrogatory. I just want to make sure, though, that the representation was just a moment ago that the judge found that he could not be a comparator. That he was not raised as a comparator because he made the same amount. That's correct. Okay, and I'm adding to the fact that they did not raise any of the hospital CADs until after the close of discovery. And then even at that time, they did not include Mr. Patel. Now, I want to be very clear about also what was said about the plaintiffs made less up until December 2021. Let's get very clear on the timeline. In 2021, Stericycle was engaging in a very large scale reduction reorganization called Supernova. Supernova started on the hospital side. It changed, it moved, it reallocated titles. Lots of things were going on. During that time, plaintiffs were in a lower level role. Supernova, undisputed in the record by Ms. Galloway's deposition and Ms. Caruso's deposition, rolled out on the hospital side first. Those on the hospital side were given their titles of key account directors. Salaries were changed. Salaries were moved around. So for plaintiffs' counsel to say they made less until December of 2021, it's because a factor other than sex is that Supernova was rolled out first on the hospital side, not until the end of the year in December on the national side. Males, females, everyone alike were dealt with on the hospital side of the company in December of 2021. Two months later, it was completed on the hospital side. Ms. Caruso was very clear. Their first and number one priority was the hospital side. Now, with that, with the new eight or nine hospital CADs that were added after the close of discovery, in her deposition, Ms. Galloway, who is the vice president of human resources internationally So I just want to make sure that I appreciate the record. Is it the representation that Ms. Lane and Ms. House were not promoted until December of 2021? Correct, that their official promotion was in December of 2021. There was deposition testimony by Ms. Caruso. They didn't have the budget for the national side, and it was not increased until Q1 of 2022. So when they received their raises to $98,000, just like Mr. Patel on the hospital side, he received his two months earlier for mere timing, budgetary concerns of it being rolled out first on the hospital side. Again, I want to make sure that I understand that they were not promoted until December of 2021. Ms. Lane and Ms. House. There was a transition period that was going on, but there was no budget to officially give them raises. You're answering a different question because I want to make sure that we appreciate your counsel on the other side made the representation that they were promoted in September of 2021 and not until they complained that they receive the increase to their base salary in December of 2021. And so was it your position this morning is that they were actually not promoted in September, but actually promoted in December? To be very clear, there is nothing in the record that says they were promoted in December in September. What the record says is there was discussions about wanting to promote them. There was open positions. They were moving employee one around and that they had the official budget and the official time to make that official in Q1 of 2022. And that's where they got their notices of their raises in December. The fact that they complained had nothing to do with the fact that there was already testimony that we are allotting salaries and budget in Q1 of 2022 to raise their salaries. So, I agree there's ambiguity as to the transition. When did they start doing the job of a CAD? So, there was a transition period as all of that was shuffling around. We do not have an exact date. You don't have a start date. We don't have an exact date. You don't have a promotion date. I'm sorry? You don't have a promotion date and you don't have a start date. We do not have that in the record. That all sounds kind of hard in terms of an affirmative defense on summary judgment with all those gaps in the record. Well, the point is that whether or not they were paid differently than the men. And so, we really want to drill down to this affirmative defense. Of those males, we're talking about only one individual who received a pay raise before plaintiffs and that's Mr. Austin. And the other ones were all grandfathered in to their positions because they had already been due for it.  Mr. Patel received the same exact pay as him, as them, but then there's this two-month period. And so, that is the clear testimony in the record that there was not a budget to move the salaries on the national side until Q1 of 2022. So, when we look at the affirmative defense, the reason why seven of those hospital CADs made more is clearly testified that they were already doing the job. They were already in roles doing the position. Now, Ms. Galloway did not have at her fingertips, because we were blindsided three days after discovery closed, that these individuals were even comparators, exactly what their titles were, exactly what their salaries were. But there was testimony from Ms. Galloway, testimony from Ms. Caruso, and testimony from Ms. Brown. But you certainly should know when the plaintiffs started their new jobs and when they were promoted. I'm sorry? The issue we were just discussing with Ms. Pryor, that information, you certainly would know or should know. Again, it was a fluid process of changing individuals around and they were reallocating accounts. And a lot of it was when some of it was, you know, moving different accounts at different times. This is dealing with large accounts for Walgreens, CVS, and laboratories. And to finally get into the key account director position, you had to have the largest one million plus accounts. They were a process of shuffling accounts all over the place through this very large reorganization. This wasn't just a simple, you're now promoted, move from desk A to desk B. This was shuffling and moving around major, major organizations on hospitals, independent medical networks, pharmacies, laboratories. And so it did take some time until they were officially fully ramped up with their one million plus book of business that would have them in the key account director role. And so to officially give them the job raises happened in Q1 of 2022 when they had the budget to do that. So, you know, again, the eight hospital key account directors were grandfathered in. It's undisputed in the record that they had already been doing that salary, that position. It was merely a title change. And for Mr. Patel, he made the exact same money as them. His salary was two months earlier because of the logistics and the timing of the rollout of the Supernova reorganization and budgetary reasons. Mr. Austin also had a prior higher salary history. He held the position the plaintiffs never held. He held a major account manager position. He worked on the hospital side. Do we have a start date for him, for Mr. Patel? Do we know when he was promoted? He was promoted around the same time as Mr. Austin in October-ish of 2021. Because, again, he was on the hospital side and hospital happened first. And so Ms. Galloway testified that they looked at experience, they looked at skill, and they looked at performance in setting his raise. And he had a higher prior salary history. He received a commensurate raise. I will note that former plaintiff Tony Stone received the largest raise, larger than Mr. Austin. So unless there's any other questions, I can thank the court for their time. Okay, thank you. Thank you. Sorry, I'm going back to Galloway's deposition. So it's hard for me to be able to say Robert Austin has paid, you know, a different wage based on not knowing the factors.  It could have been a merit increase, could have been through great performance, could have been a variety of factors. Hard for me to say each one of those. Right, and then later in her testimony, I have it here. She specifically asked about Robert Austin, and she said, we looked at experience, skill, and performance. All of that was considered, every factor. That's on page 101-19 to 104-8 of her deposition. And she repeatedly said, I would have to go back and look at success factors in ADP to tell you the specifics, because as she sat there in her deposition, these individuals had not been raised as comparators until three days after the close of discovery. And so she did not have at her fingertips the minute details, but she expressly testified that it was absolutely every factor was considered was experience, skill, and performance. And that's only talking about those who weren't already doing the position. And that last point you made, you were citing what? Absolutely looked at all these factors? She absolutely looked at all of those factors. Are you quoting? Yes, I'm quoting from her deposition. Quote. Which page? I have it listed at 119. I'll get the exact site here. I was quoting from 103-04. Yeah, I have it cited at 101-104, and I'm just looking for that exact language here. Sorry. Oh, hang on. I do have it on a separate piece of paper. Bear with me, because I know I have this. Okay. I don't have the exact pin site here. I just have it between 101 and 104. So she says, so I think all of it was considered every factor. And then two paragraphs later, she says it's hard for me to be able to say Robert Austin has paid a different wage based on not knowing the factors. Could have been this, could have been that, could have been this other thing. Correct. Correct. And that's why she said she needed to go back, look at ADP, look at success factors, because, again, these were individuals that were not part of the prior record. Thank you. All right. Ms. Schilling, we'll give you two minutes. Opposing counsel leaves out two important things. One, in the record, there are promotion documents for all of the men, but there is nothing showing the date that the women were promoted. However, the women, during their depositions, namely Kathy Hopkins, which was one of the original plaintiffs, testified that in September of 2021, they all four knew about their promotions, and that she had started asking their soon-to-be boss, Chris Fry, what their base salaries were going to be. Mr. Fry, in his deposition, admitted that they had asked him those questions. So if they hadn't been promoted to the role by September, why are they asking about if they were receiving the same as the men? If they hadn't been promoted to the role until December, as Ms. Schilling claims, why would they have filed a complaint at that time? If they hadn't been yet promoted, how in the world would they have known to file a pay disparity complaint in early December? The record, defendant has nothing to show on their side when they were actually moved into the role, because for whatever reason, the women weren't given any documentation. What do we do with the admitted interrogatories, in particular, answer to number eight and answer to number 11? Number 11 is where you list out the male counterparts that you believe are comparables. But then in the answer to question number eight, you said that plaintiff now believes hospital-side cats are comparable to national-side cats. Correct. And a few questions down, I'm sorry, you don't list Mr. Patel. Right, we didn't list Mr. Patel because for all we knew at that time, they had all been brought to that at the same time, because Ms. Galloway testified to that. However, when defendants attached their pay chart to their summary judgment motion and the documents supporting the information in the pay chart, we learned that Mr. Patel got his raise to $98,000 well before our clients did. Up till that point, all we had was payroll spreadsheets that defendants had provided during discovery. They were not ambushed. They provided reams of paperwork about the hospital cats in response to our document request. But all we had at that time was their earnings as of the end of 2021. There was no history before that. It was only at summary judgment that we learned, wait a minute. Mr. Patel had his raise in September, and our clients didn't get it until January. That's why he wasn't listed initially, but defendants' own evidence showed it. You know, defendants keep wanting, in their police brief, they say, they admit there's very little written documentation or evidence supporting a justification for why the CAD salaries are higher, or why the men's salaries are higher than the women's. And they claim that's because we ambushed them. But again, in discovery, they produced hundreds of pages pertaining to the hospital CADs. And as the district court said, a plaintiff does not have to plead comparators in their complaint in order to use them as comparators at summary judgment. I mean, that's the purpose of discovery, right? Like, we pled a colorable complaint because we knew one man was making more throughout the discovery process. We asked for all of this information. They produced it without objection, and we learned that the problem was much broader than we originally thought. The district court twice ruled that there was no problem with the way that we handled that. And I agree with Judge Hamilton. What you said is that the fact that they cannot even point to a promotion date on their end or the lack of documentation that they have, I mean, it is certainly that a jury could agree and find that what the defendant's saying seems true. However, there's ample evidence in the record from which a jury could also believe that what defendant is saying is false. Okay. If I could, just one quick question. Could you explain to us why the relevant comparison here is of base salaries only rather than total compensation? It doesn't seem to be disputed, but it's kind of unusual. Yeah. It was addressed in the district court briefing, and there's case law which says, for purposes of salespeople particularly, that if you were to compare commissions, if you were to lump commissions in with base salaries, that actually would penalize good performers, right, which is the exact situation in this case. So the plaintiffs earned really good commissions. And if you lumped all of their income together, the plaintiffs would have been higher earners. But that's because they did their job better. The base pay, which by stericycles own policies, is just for purposes of like the non-sales aspect of the job, the paperwork and things like that. And Judge Shaw agreed with the cases that we cited. I'm not trying to argue with either side of that.  So, okay, thank you. Okay. All right. Well, thank you to both counsel. We will take the case under advisement. And that concludes oral argument this morning. Thank you. Okay.